**Denise DOUGLAS, Appellant,**

v.

**Victor LYLES, et. al., Appellees.**

**No. 02–CV–1176.**

District of Columbia Court of Appeals.

Submitted Sept. 23, 2003.
Decided Jan. 15, 2004.

Barry M. Tapp, Laurel, MD, was on the brief for appellant.

Othello G. Jones, Jr., was on the brief for appellees.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Appellant seeks reversal of the trial court's grant of summary judgment to appellees in her action for specific performance of a contract to sell to appellant a house at 63 Quincy Place, N.W. The trial court held that appellees could not be compelled to convey the property through a grant of specific performance because the appellees did not hold clear title to the property. We conclude that the appellees have both a duty and the apparent ability to provide marketable title under the contract for sale. Accordingly, we reverse the grant of summary judgment and remand for further proceedings.

## I.

The house at 63 Quincy Place N.W. ("the property") was owned in fee simple by Chauncey Herman Lyles, Sr. ("Lyles, Sr."), when he died intestate on September 4, 1991, domiciled in the District of Columbia. Lyles, Sr. was survived by his wife, Ernestine Lyles, and five children: the four appellees (Victor Lyles, Saundra Jenkins, Sheila Darnell, and Patricia Matthews) and Chauncey Lyles, Jr. (deceased and hereinafter referred to as "Lyles, Jr.").

As a consequence of the intestate death of Lyles, Sr., his wife and children inherited the property upon the completion of probate proceedings. Ernestine Lyles held a one-third (1/3) share of the property and each of the five surviving children held one-fifth (1/5) of the remaining two-thirds (2/3) of the property, as tenants in common. D.C.Code § 19–301 (2001).

Approximately five years later, on June 21, 1996, Lyles, Jr. died intestate with no surviving children or spouse. In accor-dance with the intestate laws of the District, his mother, Ernestine Lyles, stood to inherit the estate of Lyles, Jr., including his 2/15 interest in the property. D.C.Code § 19–308 (2001). Two years after the death of Lyles, Jr., on April 3, 1998, his sister, appellee Patricia Matthews, was appointed unsupervised personal representative of his estate. D.C.Code § 20–501 (2001).

Ernestine Lyles then died intestate on August 11, 1998. At the time of her death, she held a 1/3 interest in the property, acquired from her husband, and all inchoate rights in her son Lyles Jr.'s estate, which included a 2/15 interest in the property. Although the probate of Lyles Jr.'s estate had not been completed at the time of Ernestine Lyles' death, it is clear that "[w]hen a person entitled to distribution dies before distribution is made, [her] share goes to [her] estate or legal representatives." D.C.Code § 19–313 (2001). The intestate heirs of Ernestine Lyles' estate are her surviving children: appellees Victor Lyles, Sheila Darnell, Saundra Jenkins, and Patricia Matthews. Appellee Victor Lyles was appointed unsupervised personal representative of his mother's estate on March 29, 2001. D.C.Code § 20–501 (2001).

Appellant initially offered Victor Lyles the amount of $55,000 for the property on June 17, 2000. This offer was rejected. Thereafter, appellant raised her offer to a cash sale price of $70,000, and Victor Lyles accepted. This agreement led to the subsequently executed sales contract at issue in this case. The contract was executed by appellant and all four appellees (the surviving children of Ernestine Lyles) on January 3, 2001, with an earnest money deposit of $1000 delivered to the closing agent as per the terms of the contract.

The contract contained a standard clause relating to the obligation of the seller to deliver good title.[1] Based on a preliminary title search, the closing agent required further information from appellees about Ernestine Lyles and Lyles, Jr., both of whom were named in the title search. Appellees proposed a renegotiation of the sales contract for a higher purchase price. Appellant refused and filed this action for specific performance and damages on January 3, 2002.[2]

All parties appeared on January 15, 2002, and appellees agreed to stay a sale or other disposition of the property until a hearing on appellant's motion for a preliminary injunction. On March 15, the trial court continued the stay and directed the parties to submit further legal arguments. Appellees filed a motion for summary judgment, and appellant filed an opposition thereto.

On July 23, 2002, the trial court granted appellees' motion for summary judgment, ruling that the equitable remedy of specific performance was not available because (1) the appellees intended to convey the entire property and not only their partial shares and (2) the estates of Ernestine Lyles and Lyles, Jr. were not parties to the sales contract. Appellant filed a motion to alter or amend judgment, which was denied. This appeal followed.

## II.

In the District of Columbia, legal title to real property (alike with personal property) passes not directly to the heirs or devisees, as at common law, but rather to the personal representative of the decedent's estate. D.C.Code § 20-105 (2001). This provision "operates to vest legal title to all a decedent's property in the personal representative, and, therefore, appointment of a personal representative is a prerequisite to probate and distribution and precludes the possibility of non-judicial distribution." *Richardson v. Green,* 528 A.2d 429, 430 (D.C.1987). Thus, quite plainly, the four intestate heirs did not hold legal title to the entirety of the property when the contract was signed, although they consisted of all the intestate heirs entitled to a distributive share of the real property.[3]

In granting summary judgment in this state of affairs, the trial court relied on *Reilly v. Cullinane,* 53 App. D.C. 17, 287 F. 994 (1923), as controlling precedent. In *Reilly,* the Court of Appeals held that the equitable remedy of specific performance could not be invoked to require a husband, who entered into a contract to sell his home, to convey property to the buyer, in light of the dower interest in the property held by his wife, who was not a party to

1. The precise language of the relevant clause is quoted and discussed in part II(B) of this opinion.

2. Appellant's claim for damages was dismissed with prejudice by the trial court because it considered damages for imperfect title to be foreclosed by the contract. Appellant did not appeal the dismissal of that claim.

3. While appellee Patricia Matthews could have signed as the personal representative of Lyles, Jr., she did not purport to do so. And at the time of the execution of the contract, appellee Victor Lyles had not yet even been appointed as the personal representative of his mother's estate.

There is no evidence in the record that anyone other than appellees will acquire shares in the property through intestate succession or that the property will have to be sold by the estate to cover outstanding debts and costs. That is to say, no indication appears that the probate proceedings might reveal obligations to third parties that might prevent full ownership from passing to appellees as heirs.

the sales contract. *Id.* at 21–22, 287 F. at 998–99.

We do not think *Reilly* is controlling. In *Reilly,* the wife's interest was separate and distinct from that of the husband, and there was no way in which the husband could legally eliminate her interest in the property as a distinct third party. Our case is quite different. Here, the appellees not only are all of the intestate takers of the property at issue but also had the right to insist upon distribution of their interests in the real property consistent with the provisions of D.C.Code § 20–1103 (2001). Appellees made no claim that the property was needed to pay debts and claims against the decedents' estates; therefore, there was no impediment to perfecting their interests. This case to some degree factually resembles our recent case of *DSP Venture Group, Inc. v. Allen,* 830 A.2d 850 (D.C.2003), decided after the trial court's ruling in the case now before us. There, the seller, the sole legatee of an unprobated will, entered into a contract to sell real property owned by the decedent. *Id.* at 850. We held the contract to be enforceable against the seller. *Id.* While it is true that the contract there indicated that probate proceedings were contemplated and that we did not rule on any argument that the contract was legally invalid for lack of capacity on his part to sell property belonging to the decedent's estate, *id.* at 851 n. 1, those features do not compel a different result here, as we shall now discuss.

### A.

■ First, there is nothing strange or unusual about a seller agreeing to sell property that he does not at the time own outright. The short selling of stock or a sale by a merchant of goods that he plans to acquire in the future are obvious examples.[4] But even more is involved here. Appellees are the heirs of Ernestine Lyles' estate and entitled to distribution pursuant to the probate proceedings now under way. It is quite lawful for an anticipatory owner to contract to sell property before title has passed to him and such a contract is generally enforceable against the anticipatory owner.

■ For example, at common law a presumptive heir can assign to a third party as ephemeral an interest as his or her expectancy interest. *See* RESTATEMENT (THIRD) OF PROPERTY, WILLS AND OTHER DONATIVE TRANSFERS § 2.6 comment j (1999); 16 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 90.13 (2000). A person is an expectant distributee "if the person anticipates receiving property on the death of a person who is currently alive." POWELL, *supra,* at 90–160. A contract to assign an expectancy interest is only enforceable at equity, *i.e.,* by specific performance. *Id.* at 90–162. An assignment is valid if "it is based on fair consideration and is made voluntarily under circumstances free of fraud or oppression." *Id.* A prospective heir can bind all or a portion of the expectancy interest. *Id.* at 90–165. The consequences of assignment to a third party are clear—the assignment "entitles the assignee to specific performance of the assignment upon the death of the source." *Id.* at 90–166. While our courts have not previously addressed or adopted this doctrine, Maryland law does recognize the valid as-

---

4. Of course in such circumstances the normal remedy would be damages, whether or not the seller eventually gets title to the sold goods. However, "[w]hen real property is the subject matter of the agreement, the legal remedy of damages is assumed to be inadequate, since each parcel of land is unique; specific performance is warranted in such a case." *Coburn v. Heggestad,* 817 A.2d 813, 823 (D.C.2003) (quoting *1010 Potomac Assoc. v. Grocery Mfrs. of America, Inc.,* 485 A.2d 199, 212 (D.C.1984)).

signment of an expectancy interest in land for fair and adequate consideration. *See Keys v. Keys*, 148 Md. 397, 129 A. 504, 505–506 (1925).[5]

But we need not decide that precise issue, because in this case, the appellees had more than a bare expectancy interest—the owner of the property was already deceased when the contract was entered into and, thus, there was no chance that a change in the laws of intestate succession or creation of a will could change the outcome. If a person with a mere expectancy interest can validly assign that interest and the assignee can obtain specific performance, then it would follow that appellees' contract here to sell property in which they had a specific and quantifiable future interest should be enforced.

■ Further guidance on the general principle that one can validly contract to sell that which he does not yet own comes from the doctrine of after-acquired title, which holds that "if a grantor purports to transfer ownership of real property to which he lacks legal title at the time of transfer, but subsequently acquires legal title to the property, the after-acquired title inures, by operation of law, to the benefit of the grantee." *M.M. & G., Inc. v. Jackson*, 612 A.2d 186, 190 (D.C.1992) (quoting *Miller–Long v. John Hanson Savings & Loan*, 676 F.Supp. 298, 299–300 (D.D.C.1987)). In *Miller–Long*, the doctrine was held applicable to a deed of trust that was inoperable when executed because the purported property owner did not at that time hold title to the property. 676 F.Supp. at 300. Richard Miller executed a deed of trust in favor of John

Hanson to secure a loan. Hanson acquired no actual interest in the property at the time the deed was executed because Miller did not hold title. However, Miller later acquired title to the property upon the death of his mother. The district court found that Hanson's deed of trust attached to the property when Miller came into actual ownership.

Thus, the contract was not unenforceable in equity simply because the shares of the property held in Ernestine Lyles' and Lyles, Jr.'s estates had not yet been distributed to the appellees pursuant to D.C.Code § 20–1103 (2001). We turn now to the contract itself to determine the precise rights and obligations of the parties.

## B.

The contract signed by appellant and appellees contains a standard clause relating to the marketability of title:

The property is to be sold free of encumbrance, except as aforesaid; title is to be good of record and in fact, subject, however to covenants, conditions and restrictions of record, if any; otherwise the deposit is to be returned and sale declared off at the option of the purchaser, unless the defects are of such character that they may readily be remedied by legal action, but the seller and Agent are hereby expressly released from all liability for damages by reason of any defect in the title. In case legal steps are necessary to perfect the title, such action must be taken promptly by and at the seller's expense, whereupon the time herein specified for full settlement by the purchaser will thereby be extended for the period necessary for such action.

5. The common law of the District of Columbia includes all common law in force in Maryland in 1801. *See* D.C.Code § 45–401 (2001). Thus, a Maryland Court of Appeals decision expounding the common law of that state is

"an especially persuasive authority when the District's common law is silent." *Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007, 1012 n. 12 (D.C.2002) (quoting *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983)).

This contract clause places a burden on the appellees to take such "legal steps [as] are necessary to perfect the title," which in this case can be done through the probate process. In *Reilly*, the appellate court recognized that "the requiring of the husband to do that which he can do, and ought to do, is correct enough" and that "decrees in equity should be within the power of the defendant to perform." 53 App. D.C. at 19, 20, 287 F. at 996, 997. Such is the case here.[6]

In a prior case involving the failure of sellers to perfect marketable title as required by contract, we reversed the trial court and found that the purchaser was entitled to specific performance. *Pullian v. Coy S. Jones Realty Co.*, 416 A.2d 714 (D.C.1980). After the parties executed a contract for sale of property, the purchaser discovered that an unrepresented minor had an interest in the property. *Id.* at 716. The trial court appointed a trustee to represent the minor so the sale could be completed, but the sellers then refused to convey the property and attempted to sell to a third party for a higher price *Id.* The sellers argued that the purchaser had failed to join an indispensable party in the action for specific performance and that the purchaser did not "exercise his right to purchase in a timely fashion." *Id.* With regard to the first argument, we stated "it is clear from the language of the contract of sale that the seller was obliged to convey clear title to the buyer." *Id.* We found that the obligation to join indispensable parties in order to clear title rested with the seller. *Id.*[7]

For the foregoing reasons, the grant of summary judgment in favor of appellees is reversed and the case is remanded for further proceedings.

*Reversed and remanded.*

---

**6.** We need not address here a situation where no legal steps were open to the seller, as was the case in *Reilly*.

**7.** Apparently the minor, acting through a court-appointed trustee, was not objecting to the sale of his interest.