Stephen J. ACKERMAN, Jr., Appellant,

v.

Frank M. ABBOTT, Appellee.

No. 08–CV–351.

District of Columbia Court of Appeals.

Argued May 15, 2009.

Decided Sept. 3, 2009.

John T. Szymkowicz, Washington, with whom J.P. Szymkowicz was on the brief, for appellant.

George B. Huckabay, Bethesda, MD, for appellee.

Before RUIZ and OBERLY, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge.

One of the most ancient questions that courts (and generations of law students) have been called on to answer is: Who owns Blackacre? So here, in this appeal, we examine the competing claims of two parties to a piece of real property. One, the appellee, is the grantee as trustee of a fee-simple deed of the property that the grantor, at the time of the conveyance, did not own. The other, the appellant, is the subsequent assignee of the grantor's interest in a different trust of which she was the sole principal beneficiary and whose res was to include the same parcel of property she had previously conveyed. We apply the after-acquired title doctrine, together with basic principles of property law, and conclude that the trial court properly held that the earlier-in-time grantee has the superior claim to the property.

## I.

Because the facts of the case matter greatly to our disposition, we recount them in detail. At issue in this case is improved real property located at 136 North Carolina Avenue, in Northeast Washington, D.C. (the "Property"). In 1972, the Property, which had been in their family for many years, came to be owned as tenants in common by two sisters: Margaret Mary Sullivan (hereinafter "Margaret") and

Genevieve Frances Sullivan (later Ackerman) (hereinafter "Genevieve").

In August 2001, Margaret died testate leaving most of her estate (which included her half-interest in the Property), to the Margaret Mary Sullivan Revocable Trust ("MMSRT"), a revocable living trust she had created in 1995. Under the terms of the trust, the trustee was to pay over to the settlor all income of the trust estate for the duration of her life. Upon her death, and after payment of all taxes and funeral expenses, the trust instructed the trustee to distribute all trust property to her sister Genevieve if she survived Margaret by thirty days and was legally competent at the time of her death. MMSRT appointed appellant herein, Stephen Ackerman, Jr. ("appellant"), Margaret's nephew and Genevieve's son, as trustee upon her death or incapacitation. MMSRT also appointed Mary Frances Ackerman Abbott ("Mary Frances"), who was Margaret's niece, Genevieve's daughter and appellant's sister, as successor trustee. Similarly, appellant and Mary Frances were appointed as personal representative and successor personal representative, respectively, under Margaret's will.

Margaret's interest in the Property was never conveyed to MMSRT during her lifetime.[1] At the time of Margaret's death, the parties apparently believed that Margaret and Genevieve had owned the Property as joint tenants with right of survivorship, and thus Margaret's probate estate did not include the Property. Accordingly, when appellant opened Margaret's estate for probate in 2001, he did so under our law as a "small estate" under D.C.Code § 20–352 without reference to her interest in the Property.

On May 24, 2002, subsequent to Margaret's death, Genevieve and her husband Steven Ackerman executed two separate trusts: the Genevieve Ackerman Family Trust ("GAFT") and the Steven Ackerman Family Trust ("SAFT"). Both trusts named appellee herein, Frank M. Abbott, as trustee. On June 27, 2002, believing that she owned the Property outright in fee simple after she survived her sister Margaret, Genevieve executed a deed conveying an undivided, one-half interest in the Property to each of the trusts (GAFT and SAFT).[2] The deed was recorded in the land records of the District of Columbia.[3]

In 2003, appellant sought to have his mother's trust, GAFT, reformed, arguing that a condominium his mother owned in Delaware had been placed in the trust contrary to his mother's wishes that it go to him. The trial court ruled against him, and enforced the trust's "no contest" clause, which had the effect of disinheriting appellant, who was named as a beneficiary under the trust. We upheld the court's application of the "no contest" provision on appeal. *Ackerman v. Genevieve Ackerman Family Trust*, 908 A.2d 1200, 1201–02 (D.C.2006). After the trial court's

---

1. Although the Schedule A to Margaret's trust purports to "deed" the Property to the trust, the parties and the court (in a separate action before Judge Eugene M. Hamilton) treated the Property as having remained titled to her estate. No one in this appeal contends otherwise.

2. Genevieve had first attempted to convey the Property to the trusts on May 21, 2002, but it was later discovered that the notary they had used was not licensed in the District of Columbia. Accordingly, Genevieve executed a replacement deed on June 27, 2002, using a District of Columbia notary.

3. The fact that the grantee of the Property was the trustee of two family trusts is a possibly confusing feature in grasping the facts, especially since a third trust, the MMSRT, is also involved in the scenario. In reality, the grantee can simply be conceived of as an individual, and the trust aspect be disregarded. The only relevant trust as such is the MMSRT.

ruling in 2005, Genevieve had attempted to revoke the trust and require Frank Abbott, as trustee, to transfer all trust assets to her. Concluding that Article II of GAFT required the trustee's assent to revoke the trust, the trial court held that Genevieve could not revoke the trust without Abbott's consent. No appeal was taken from this holding.

In April 2007, it was discovered that Genevieve and Margaret had owned the Property not as joint tenants with right of survivorship, but as tenants in common. In order to perfect the trusts' interests in the Property, Frank Abbott, as trustee for GAFT and SAFT, asked appellant to re-open Margaret's probate estate to allow appellant to (i) convey Margaret's undivided one-half interest to himself as trustee of MMSRT, and (ii) then convey her interest to Genevieve in accordance with the terms of the trust. Appellant refused to re-open the estate. Accordingly, Abbott moved to replace appellant as personal representative with appellant's sister, Mary Frances, whom Margaret's will nominated as successor personal representative. The trial court granted Abbott's motion, and on June 29, 2007, ordered Mary Frances to transfer Margaret's "one-half interest in the property . . . to Stephen J. Ackerman, Jr., as the Trustee of the Margaret Mary Sullivan Revocable Living Trust, for distribution to Genevieve Sullivan Ackerman." [4]

Two months later, on August 31, 2007, Genevieve executed an instrument by which she assigned "all rights, title, and interest I now have, or in the future may have, in the assets, both real and personal, current and future, and all distributions realized from the sale of Trust assets, of the Margaret Mary Sullivan Revocable Living Trust, to my beloved son Stephen J. Ackerman, Jr."

On September 11, 2007, Frank Abbott filed a complaint for declaratory judgment in the Superior Court, seeking in effect a holding that his right to ownership as trustee of the two trusts by reason of the deed was superior to that of appellant as assignee. Abbott moved for summary judgment. Opposing the motion, appellant argued that the doctrine of after-acquired title would not operate to benefit the trusts. According to appellant, because Genevieve had assigned all her rights as beneficiary of MMSRT to him, Genevieve could never acquire legal title to the Property making the after-acquired title doctrine inapplicable, and any transfer of the Property out of MMSRT to Genevieve would, under the assignment, pass solely to him.

In a February 6, 2008, Order, the trial court granted summary judgment against appellant and Genevieve. The trial court held:

> [T]he assignment dated August 31, 2007 does not trump the doctrine of after-acquired title. Although the August 31, 2007 assignment purports to transfer all of Genevieve's interest in the MMSRT, Genevieve Ackerman did not have the property to transfer at the time she assigned her interests to Stephen Ackerman, Jr. Rather, by operation of law pursuant to the doctrine of after-acquired title, *see Douglas v. Lyles,* 841 A.2d 1, 5 (D.C.2004), Genevieve Ackerman's interest in the property transferred to the GAFT and SAFT in June of 2002.

Accordingly, the trial court ordered that "upon the transfer to Genevieve Ackerman of Margaret Mary Sullivan's prior interest in the . . . [Property] . . . legal title to the said property shall inure one-half to the Genevieve Ackerman Family Trust and

---

4. It appears that, presumably because of the on-going dispute, the successor personal representative has not transferred the Property to appellant as trustee and that legal title remains in the estate.

one-half to the Stephen Ackerman Family Trust as tenants in common...."

## II.

Before us, appellant reiterates his argument made to the trial court; namely, that the after-acquired title doctrine has no application in a case such as this, where the grantor will never acquire legal title to the property she purported to convey. Appellant points out that Genevieve has assigned her beneficial interest under the trust to appellant, and as a result, appellant urges, she will never acquire title to the property, a pre-requisite to the application of the doctrine. Thus, appellant reasons, the doctrine cannot apply in this case and he is entitled to Margaret's one-half interest under the assignment.[5]

Appellant's purely mechanistic approach would require that we apply the after-acquired title doctrine in a manner that is at odds with its purpose and basic precepts of property law. We decline to do so. We hold that the trusts have the superior claim to the Property.

■■ The doctrine of after-acquired title "holds that 'if a grantor purports to transfer ownership of real property to which he lacks legal title at the time of transfer, but subsequently acquires legal title to the property, the after-acquired title inures, by operation of law, to the benefit of the grantee.'" *Douglas v. Lyles,* 841 A.2d 1, 5 (D.C.2004) (quoting *M.M. & G., Inc. v. Jackson,* 612 A.2d 186, 190 (D.C.1992)); *see Miller–Long v. John Hanson Sav. & Loan, Inc.,* 676 F.Supp. 298, 299–300 (D.D.C.1987) (noting that District of Columbia long ago adopted doctrine of after-acquired title) (citing *Corcoran v. Brown,* 3 D.C. (3 Cranch C.C.) 143, 145–46 (1827)). The after-acquired title doctrine is a species of estoppel by deed, the principle that a grantor may not deny the truth of a deed against one in whose favor he executed it.[6] 31 C.J.S. *Estoppel and Waiver* § 9 (2008). Having conveyed title he did not have, when the grantor finally does acquire title, the doctrine operates to vest title automatically in the grantee. As the Court of Appeals of Maryland has explained it:

It is a generally accepted principle in the law of conveyancing that a deed may have the effect of passing to the grantee a title subsequently acquired by the grantor. The grantor who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of conveyance will not be permitted, when he afterwards acquires a good title to the land, to claim in opposition to his deed. This principle is based upon the ancient doctrine that such a deed operates upon the after-acquired title by way of estoppel. It has been stated that the title vests by operation of law or by inurement as soon as it is acquired by the grantor, without the need of judicial aid, in order to prevent circuity of action. It has also been stated that the doctrine applies regardless of whether the grantor assumed to convey title by fraud or mistake.

*Columbian Carbon Co. v. Kight,* 207 Md. 203, 114 A.2d 28, 31–32 (1955).

---

**5.** Appellant makes no argument that the application of the doctrine is in any way affected by the form of the deed or lack of consideration or by the recording acts.

**6.** Powell writes:

The doctrine of after-acquired title gets its force from the doctrine of *estoppel by deed.* Title passes through the conveyor's hands to the conveyee if the conveyor has represented in the deed that he owned such title; being estopped from denying that representation, the conveyor becomes the mere constructive trustee for the "real" owner—the conveyee.

14 POWELL ON REAL PROPERTY § 84.02[2][a], at 84–32 (2000).

Had Genevieve conveyed the Property only once, there could be no dispute that the doctrine would apply to vest title in the trusts once Genevieve acquired Margaret's one-half interest under the terms of MMSRT, without the need for her to reconvey the Property. *See Douglas, supra,* 841 A.2d at 3 (applying doctrine to contract for sale of property over which seller did not have legal title). That conveyance, and the principle of estoppel by deed, would operate to prevent her from denying the validity of the conveyance once she acquires legal title. *See* 14 POWELL, *supra* note 6, § 84.02[2][a], at 84–32. In this case, however, Genevieve then assigned her interest as the beneficiary of MMSRT to appellant. Given that the doctrine would operate against Genevieve had she not assigned her interest to appellant, the question arises whether Genevieve can avoid that result simply by assigning her interest in MMSRT to appellant. The answer must be no.

■ A basic principle of property law is encapsulated in the venerable Latin maxim: *Nemo dat quod non habet* (no one can give what he does not have).[7] *Miller–Long, supra,* 676 F.Supp. at 300; 23 AM. JUR.2D *Deeds* § 7 (2003). Accordingly, under this fundamental precept of property law, if the estoppel by deed binds Genevieve, then it also binds appellant. *See Richmond Cedar Works v. West,* 152 Va. 533, 147 S.E. 196, 199 (1929) ("[T]hose who derive title from or through the parties, ordinarily stand in the same position as the parties, and are bound by every estoppel that would have been binding on the parties."). Genevieve could not, by virtue of the assignment, unburden her interest from her earlier conveyance and the doctrine of after-acquired title. Because appellant took via the assignment from and *through* Genevieve only what right and interest she had to convey, appellant's interest was subject to the operation of the after-acquired title doctrine in favor of the trusts.

■ That courts uniformly hold that the doctrine of after-acquired title binds not only the original grantor, but also the grantor's heirs and assigns, should come as no surprise since it follows logically from the above. *See Jacobsen v. Nieboer,* 299 Mich. 116, 299 N.W. 830, 831 (1941); *Horowitz v. People's Sav. Bank,* 307 Mass. 222, 29 N.E.2d 770, 771 (1940) (estoppel by deed estops grantor and "[p]ersons claiming by descent or by grant under the grantor after the acquisition of later title"); 31 C.J.S. *Estoppel and Waiver* § 25 (2008) ("[W]here a title acquired by the grantor subsequent to the grant passes by reason of estoppel to the grantee, not only are the grantor and his or her heirs bound thereby, but subsequent purchasers from the grantor or his heirs are also bound."); 14 POWELL, *supra* note 6, § 84.02[3][e], at 84–40 ("[T]he doctrine of after-acquired title may divest successors of the conveyor and benefit successors of the conveyee."). In the absence of an applicable recording statute,[8] a grantor cannot defeat the appli-

7. Of course, there exist exceptions to the general rule, by which one may transfer to another greater immediate rights in property than one in fact has. In the real property area, the recording acts provide the major limitation on the doctrine. For other examples of exceptions to the general rule see, for example, D.C.Code § 28:2–403(2) (2001) ("Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer *all rights* of the entruster to a buyer in ordinary course of business") (emphasis added), and § 28:9–320(a) ("[A] buyer in ordinary course of business [but excluding certain buyers] ... takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence"). Indeed, the doctrine of after-acquired title is itself a form of exception.

8. This case presents no issue under the District's recording statute, D.C.Code § 42–401 (2001).

cation of the after-acquired title doctrine to a conveyance of apparent legal title to a grantee simply by re-conveying the property to another. In that situation, the prior grantee has priority.[9]

 It is true that appellant's claim here arises not by reason of a subsequent deed of the Property but rather through an assignment of Genevieve's interest in MMSRT. Appellant's fallacy lies in his apparent belief that he received the assignment from Genevieve totally unencumbered. A beneficiary of a trust has equitable title to her interest in the trust's assets. *Barker v. Aiello*, 84 Md.App. 629, 581 A.2d 462, 465 (1990) ("The declaration of a trust transfers legal title to the trustee, and the beneficial interest passes to the *cestui que trust*."); II SCOTTON TRUSTS § 130, at 409 (4th ed. 1987) ("[I]t seems clear that the beneficiary of a trust also has an equitable interest in the subject matter of the trust."); *see also Senior v. Braden*, 295 U.S. 422, 432–33, 55 S.Ct. 800, 79 L.Ed. 1520 (1935) (beneficiary of trust had rights in trust subject matter). At the time of the conveyance to the trusts, Margaret had already died, and while legal title to Margaret's undivided one-half interest in the Property was in the personal representative, D.C.Code § 20–105, MMSRT had an enforceable right to require the personal representative to convey the property to it under the terms of the will (subject, to be sure, to any outstanding creditor claims and expenses of administration, which do not appear to be an issue here), and Genevieve, in turn, had the right to require MMSRT to reconvey the Property to her. Since real property was involved, both rights were specifically enforceable. *Douglas, supra*, 841 A.2d at 4. Accordingly, at the time of Genevieve's deed to the trusts, both MMSRT and Genevieve as beneficiary of the principal had an existing interest in the Property, albeit a theoretically provisional one,[10] that was enforceable in eq-

9. That result is explained by any of three principles. First, as noted above, courts hold that the after-acquired title doctrine binds successors of the grantor. *See Doe ex dem. Potts v. Dowdall*, 3 Del. (3 Houst.) 369 (Del. 1866) ("Where one who has no title conveys land with warranty, and afterward acquires title, and conveys to another, the second grantee is estopped to say that the grantor was not seized at the time of the first conveyance.") Second, where a grantor has conveyed property twice, whether before or after acquiring title, where no recording statute applies, the first grantee in time is first in right. *See Campbell v. Butler*, 770 P.2d 7, 10 (Okla.1988) (holding that two grantees claiming under the after-acquired-title doctrine pursuant to conveyances before the grantor was vested in legal title took priority according to first in time principle where equities were equal); 31 C.J.S. *Estoppel and Waiver* § 25 (2008) ("When two grantees hold equitable title under the after-acquired title doctrine, the earlier in time prevails."). 14 POW-ELL, *supra* note 6, § 84.02[3][e], at 84–40–41. Powell writes:

For example, suppose a conveyor delivers a deed to Conveyee A. The deed contains an over-expansive representation of title. Conveyor later purports to grant the same interest to Conveyee B. Still later, the conveyor acquires full title. In the absence of recording, A should have priority over B, because both have equitable interests and the rule of "first time" applies.

*Id*. Third, if the grantor conveys the property to a second grantee after obtaining legal title, again in the absence of a recording statute, the grantor is deemed to have had nothing left to convey to the second grantee—title having "instantly pass[ed]" to the prior grantee. *United Oklahoma Bank v. Moss*, 793 P.2d 1359, 1362 (Okla.1990); *see Walters v. Merchants & Mfrs. Bank of Ellisville*, 218 Miss. 777, 67 So.2d 714, 716 (1953) ("[A] warranty in a deed or deed of trust carries with it an after-acquired title later obtained by the grantor or mortgagor."); *Clark v. Ferguson*, 346 Mo. 933, 144 S.W.2d 116, 118 (Mo.1940) (same).

10. MMSRT's interest in the Property was provisional only to the extent that, like the other assets in Margaret's probate estate, the Property might have needed to have been sold to pay creditors claims, funeral expenses, or oth-

uity. *See id.* at 4–5. In any realistic sense, a listing of the assets of MMSRT and of Genevieve at that point would reflect in some manner the interests of each in the Property, whether termed provisional, contingent, inchoate or otherwise. Thus, the deed of the Property by Genevieve to the trusts can be conceived of as conveying to the trusts at that point that right of Genevieve, as trust beneficiary, to the Property as part of the trust res. At the very least, it is clear that Genevieve's beneficial interest in the trust became encumbered by the effect of that deed, and the assignment to appellant was similarly encumbered.

Because appellant's rights are entirely derivative of Genevieve's—his rights are her rights—the doctrine of after-acquired title applies with equal effect against him. In other words, Genevieve's interest as beneficiary of MMSRT was subject to the trusts' claim under the after-acquired title doctrine, and the trusts can enforce those rights. Appellant's rights under the assignment are similarly encumbered by and subordinate to the trusts' claim. By the expedient of an assignment of her interest in MMSRT, Genevieve could not defeat the operation of the after-acquired title doctrine to her prior conveyance to the trusts. Accordingly, once appellant, as MMSRT trustee, transfers the one-half undivided interest in the Property—whether to Genevieve directly or to appellant as her assignee—that conveyance will inure to the benefit of the trusts under the after-

er expenses of administration. *See* D.C.Code §§ 20–906 *et seq.*

11. We recognize some ambiguity in the trial court's Order as to when legal title vests in the trusts. Because the probate order in Mar-

acquired title doctrine.[11] The order of the trial court is

*Affirmed.*

garet's estate has not yet been executed, that title remains with the successor personal representative. Once Mary Frances and appellant carry out their duties as successor personal representative and trustee, the doctrine will operate to vest legal title in the trusts.