Antonia Interdonato
GIORDANO, Appellant,

v.

Paul F. INTERDONATO, Appellee.

No. 89–1378.

District of Columbia Court of Appeals.

Argued Jan. 7, 1991.

Decided Feb. 5, 1991.

John C. Lenahan, Washington, D.C. for appellant.

Leonard C. Collins, with whom Timothy J. Battle was on the brief, Washington, D.C., for appellee.

Before STEADMAN, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Many years ago the Supreme Court observed that, "At best [the] doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended." *Friederichsen v. Renard,* 247 U.S. 207, 213, 38 S.Ct. 450, 452, 62 L.Ed. 1075 (1918). The principal question in this appeal is whether the trial judge correctly applied the doctrine so as to require plaintiff, before submission of the case to the jury, to elect between her separate claims of breach of fiduciary duty and breach of a subsequent agreement to devise property in settlement of the claim of fiduciary breach. We hold that the judge erred in requiring the election before verdict, but remand for the judge to consider application to the settlement agreement of a release later entered into by the parties.

I.

This case was before us previously in *Interdonato v. Interdonato,* 521 A.2d 1124 (D.C.1987), in which we partly reversed a grant of summary judgment in favor of defendant and remanded for trial on a complex of issues involving, among other things, defenses of *res judicata,* statute of limitations, and release. The factual background and course of proceedings were summarized by the trial judge in her post-trial memorandum denying plaintiff's motion for a new trial and/or judgment notwithstanding the verdict. We quote that rendition as follows:

On April 19, 1953, Guy Interdonato died unexpectedly. He was survived by his widow, Antonia, the plaintiff in this case, and by his son, Andrew, who is no longer a party to this action. Guy's brother, Paul Interdonato, the defendant in this case, allegedly agreed to take care of Antonia, who was 21 years old and spoke no English.

Between 1953 and 1963, Paul administered Guy's estate and managed the business ventures in which these brothers had been engaged. Antonia, however, was not satisfied with Paul's actions on her behalf.

In April, 1963, Antonia sued Paul in the District of Columbia for damages alleging fraudulent conduct and his breach of fiduciary duty as her attorney, as the executor of the estate and as a trustee of the testamentary trust created by Guy's will. The 1963 suit was settled and dismissed in 1966 when Paul allegedly made an oral promise to pay Antonia's legal expenses and to either transfer property at 527, 529 ... Eighth Street, Southeast, to Antonia or bequeath it to Andrew. During the next decade, the property was neither transferred to Antonia nor bequeathed to Andrew.

In March, 1972, Andrew sued Paul in Prince George's County seeking an accounting of the trust funds, an appraisal of the property and other relief. The 1972 suit was terminated without trial. Paul paid $64,000 to Antonia and Andrew in exchange for a release of any and all claims with respect to the administration of the trust under Guy's will.

Thereafter, November, 1982, Antonia and Andrew brought this action in the District of Columbia Superior Court alleging fraudulent conduct by Paul, and breaches of his duty as her attorney, as an executor, and as a trustee of the testamentary trust. They also alleged that Paul's failure to transfer or bequeath the property at 527, 529 and 531 Eighth Street, Southeast, constituted a breach of the 1966 settlement agreement. Paul denied the validity of all of these claims and asserted defenses based on the statute of limitations, the *res judicata* effect of the 1963 suit and the release which he was given in 1973. [Andrew dismissed his claims voluntarily before trial.]

After nine days of trial, the jury returned a general verdict of $9,642.01 for Antonia. It answered ten specific questions on five separate subjects finding that:

—Paul was not Antonia's attorney, but he did breach his duties as co-executor and co-trustee.

—Paul converted income and proceeds from 428 Eighth Street, Southeast.

—Paul promised to bequeath property to Andrew in exchange for the 1966 dismissal of the 1963 suit, but did not keep that 1966 promise.[1] However, Antonia did not rely solely on Paul's promise in dismissing the 1963 suit.

—Antonia did not know before November 23, 1979 that Paul would not keep his 1966 promise.

—Neither Paul nor anyone acting on his behalf made false representations concerning the 1973 release and Antonia was negligent in failing to become informed about the contents of the release.

Because the jury found that Antonia had signed a valid release in 1973, it awarded her nothing on the claim of breach of fiduciary duty. Its award of $9,642.01 to Antonia for conversion of income and proceeds from the 428 Eighth Street property was sustained by the trial judge—in a ruling defendant does not contest—on the ground that the conversion fell outside the scope of the release.[2] As will become clear, the election ordered by the judge meant that the issues of whether Paul made the 1966 promise and whether he breached it (as well as whether Antonia relied on it) were submitted to the jury only with respect to the defenses of *res judicata* and statute of limitations, *see Interdonato,* 521 A.2d at 1132, 1135, not as a separate basis for recovery by Antonia. One effect of the

election was that neither the trial judge, as a matter of law, nor the trier of fact had occasion to consider whether the release likewise barred the claim for breach of the 1966 agreement. See part IV, *infra.*

## II.

Before submitting the case to the jury, the judge required the plaintiff to elect between the counts charging breach of fiduciary duty and the claim of breach of the 1966 agreement. In her post-trial memorandum the judge explained this ruling as follows:

> For the breach of the 1953 fiduciary responsibilities, [plaintiff] sought the same damages claimed in her 1963 law suit, that is an accounting on various properties including, but not limited to, her part interest in the property at 527, 529 ... Eighth Street, Southeast, and recovery of income and proceeds from these properties. For breach of the oral promise which induced dismissal of the 1963 suit, she sought specific performance of the promise, that is conveyance of the property of 527, 529 and 531 Eighth Street, Southeast, to Andrew or compensatory damages in the amount of $295,000.

> Plaintiff is not entitled to both the benefit of prosecuting her 1963 law suit and the benefit of the bargain which she made in exchange for dismissal of the 1963 law suit. She must elect one remedy or the other. *She cannot await the jury verdict and then select the remedy which becomes more advantageous.* The principles of contract rescission apply. *Simmons v. Brooks,* 66 A.2d 517 (D.C.1949). A party may not invoke a remedy based on affirmance of a contract and also a remedy based on disaffirmance. *Continental Sand & Gravel*

---

**1.** Although the promise allegedly was either to transfer the property to Antonia *or* to bequeath it to Andrew upon Paul's death, the issue was submitted to the jury—for reasons not entirely clear from the record—*solely* as whether Paul had promised to bequeath property to Andrew. See note 8, *infra.*

**2.** Pointing out that the release by its terms applied only to "any matter or cause ... in respect to the Administration of the Testamentary Trust" established under Guy Interdonato's last will and testament, the judge found that the release did not cover the property at 428 Eighth Street because it was held by Antonia and Guy as tenants by the entirety and hence did not pass through the estate.

*v. K & K Sand & Gravel,* 755 F.2d 87, 93 (7th Cir.1985). [Emphasis added.]

While conceding that under modern rules of civil procedure a party may plead inconsistent theories of recovery, the judge reiterated that "a party cannot seek inconsistent remedies and then, after the jury has returned its verdict, elect the remedy which, under the jury findings, gives greater advantage." Quoting a Maryland decision (which in turn quoted a maxim of Scottish law),[3] the judge stated: "A plaintiff 'cannot approbate and reprobate.' "

### III.

We conclude that the judge, although acknowledging the difference, in fact treated as one the issue of alternative and duplicative remedies and the issue of what a party may properly plead and prove to the trier of fact, and that this was error. "The purpose of the doctrine of election of remedies is not to prevent recourse to any remedy, but to prevent *double redress* for a single wrong." *Twin City Fed. Sav. & Loan Ass'n v. Transamerica Ins. Co.,* 491 F.2d 1122, 1125 (8th Cir.1974) (emphasis added); 25 Am.Jur.2d *Election of Remedies* § 1, at 647 (1966). *See Ingber v. Ross,* 479 A.2d 1256, 1263 (D.C.1984) (acknowledging that it would be "impermissible double recovery" if party could receive *judgment* for both rescission of contract and damages on contract). At trial, plaintiff did not assert that she was entitled both to damages for the alleged breach of fiduciary duty and to specific performance (or, alternatively, damages for breach) of the contract settling the 1963 suit for fiduciary breach. Indeed, plaintiff proposed a "two-tiered" jury instruction whereby the jury would consider first whether defendant had breached his fiduciary duty to her and only then, if it answered that question negative-

ly, whether the parties had reached a 1966 settlement and defendant had breached it. In any event, we think the judge was correct in concluding that the *remedies* plaintiff sought were duplicative and that, in the event of a judgment favorable to her, she could not win relief on both claims.[4]

The judge went further, however, and ruled that plaintiff had to elect between her alternative claims before the case was submitted to the jury, reasoning that "[plaintiff] cannot await the jury verdict and then select the remedy which becomes more advantageous." We can find nothing in law or policy to support this conclusion. Certainly there would have been nothing logically inconsistent in asking the jury to decide three questions: whether defendant breached his fiduciary duty to plaintiff in the 1950's; whether the parties reached a 1966 agreement settling the fiduciary claim; and whether defendant breached this agreement. To the extent the jury might have been puzzled by plaintiff's simultaneous pursuit of a theory of fiduciary breach and a theory founded on a concession that this claim had been extinguished, it is difficult to see how *defendant* would have been harmed by any such inconsistency. And, although a verdict for plaintiff on both claims would have enabled her to choose the more "advantageous" relief available, there is nothing objectionable in the notion that " '[w]hen a jury verdict sustains several alternative theories of recovery advanced by a plaintiff, the trial court must [unless plaintiff chooses otherwise] render judgment on the theory which affords the greatest recovery.' " *Cartel Capital Corp. v. Fireco of New Jersey,* 81 N.J. 548, 564–65, 410 A.2d 674, 683 (1980) (quoting *Mowery v. Fantastic Homes, Inc.,* 568 S.W.2d 171, 173 (Tex.Civ.App.1978)).

---

**3.** *Baltimore v. Landay,* 258 Md. 568, 578–80, 267 A.2d 156, 162 (1970). *See* 25 Am.Jur.2d *Election of Remedies* § 1, at 647 (1966).

**4.** Plaintiff argues on appeal, without enthusiasm, that the two claims were not inconsistent for any purpose. Actually we need not reach that issue because, even assuming plaintiff were correct, the jury rejected her claim of breach of fiduciary duty—a decision she does not ap-

peal—and hence we could not restore her to a position of being able to collect on both her claims. Nevertheless, there seems little question that plaintiff understood the value of the claim of fiduciary breach to be embodied in the promise to devise property for which she bargained in 1966 in return for relinquishing the former claim; hence conveyance of that property, with its appreciated value, would fully compensate her for the lost claim of breach of duty.

Under Super.Ct.Civ.R. 8(e)(2), either party may plead in the alternative, either in one count or defense, or in separate counts or defenses. Alternative or hypothetical pleading, as Professor Moore has observed, "by its very nature is inconsistent," but this "is not a valid objection to it under Rule 8(e)." 2A J. MOORE, J. LUCAS & G. GROTHEER, MOORE'S FEDERAL PRACTICE ¶ 8.32, at 8–224 (2d ed.1990).[5] In addition to allowing alternative and hypothetical pleading, Super.Ct.Civ.R. 8(e)(2) specifically provides that "[a] party may also state as many separate claims or defenses as the party has regardless of consistency." As Moore observes, "The inconsistency may lie either in the statement of the facts or in the legal theories adopted, and the party will not be required to elect upon which legal theory he will proceed, since this would defeat the whole purpose of allowing inconsistent pleading." *Id.* ¶ 8.32, at 8–226.

Rule 8, in its departure from the common law, embodies the modern determination to "prevent[ ] formalities of pleadings, or rigid application of legal doctrines, from standing in the way of the equitable resolution of a civil dispute." *Mathews v. United States,* 485 U.S. 58, 70, 108 S.Ct. 883, 890, 99 L.Ed.2d 54 (1988) (White, J., dissenting).[6] This purpose compels adherence to the Supreme Court's admonition that the "scope of [the doctrine of election of remedies] should not be extended," *Friederichsen,* 247 U.S. at 213, 38 S.Ct. at 452, or that, as another court has put it, the doctrine should be "strictly confined within its reason and spirit." *Adams v. Camden Safe Deposit & Trust Co.,* 121 N.J.L. 389, 397, 2 A.2d 361, 365 (Sup.Ct.1938). The doctrine "is rooted in estoppel," and accordingly "is not available as a defense unless the defendant has materially changed his

position as a consequence of plaintiff's *previous* conduct." *North Am. Graphite Co. v. Allan,* 87 U.S.App.D.C. 154, 156, 184 F.2d 387, 389 (1950) (emphasis added). Otherwise stated, the doctrine means that

> [o]ne who, with full knowledge of facts upon which inconsistent claims for relief may be predicated, requires his adversary to defend against a version of the facts marshalled in support of one theory, cannot in good conscience *subsequently* pursue a claim resting upon repugnant factual or legal bases.

1 B.J. MOORE, J. LUCAS & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.405[7] (2d ed.1988) (emphasis added).

These considerations of estoppel have no relevance when, as in the present case, the plaintiff joins both theories, however inconsistent, in a single lawsuit and asks to submit both to the jury. In that case, the correct course is "for the court to permit [plaintiff] to go to the jury on both these theories without an election between them." *North Am. Graphite Corp.,* 87 U.S.App.D.C. at 156, 184 F.2d at 389. As the court stated in *Cartel Capital Corp., supra,* a routine products liability case involving multiple theories of liability:

> Where a defendant is found liable on the theory of strict liability, plaintiff's entitlement to recovery should not be diminished or altered because defendant is also liable on another theory of wrongdoing. It was not incumbent upon the plaintiff under the circumstances here to elect the theory upon which he was seeking recovery before the matter was submitted to the jury. Under our rules, "a plaintiff ... is not ... required to elect his theory of recovery and thereby gamble on the outcome of the trial findings...."

---

**5.** Super.Ct.Civ.R. 8 is identical to Fed.R.Civ.P. 8, and accordingly we may rely upon judicial and other authority interpreting the federal rule. *See Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 472 (D.C.1983). As Professor Wright has emphasized, a check on the right to plead inconsistently is provided by Rule 11's requirements of reasonable inquiry and that a pleading not be interposed for improper purposes. 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1283, at 533 (1990).

**6.** In *Mathews* the Supreme Court rejected the claim that inconsistent pleading should be limited to the civil context, and held that a criminal defendant may submit to the jury the defenses both that he had no intent to commit the crime and that, if he had the intent, it was the result of government inducement.

81 N.J. at 564, 410 A.2d 682–83 (citation omitted).[7] In this case, forced to elect between claims of breach of duty and breach of an agreement, plaintiff gambled on the former and lost, even though she maintained—and the jury found—that the evidence established that an agreement existed and had been breached. We conclude that the election should not have been required.

In holding to the contrary, the trial judge relied on *Simmons v. Brooks*, 66 A.2d 517 (D.C.1949), which contains the statement that "if a buyer [there, of an automobile] elects the remedy of rescission for breach of warranty he is thereby precluded *from bringing an action* for damages." *Id.* at 519 (emphasis added; footnote omitted). Careful reading of the decision, however, persuades us that it was faithful to the rule that election of remedies "is rooted in estoppel":

> Here plaintiff actually rescinded his contract by giving notice to that effect, by returning the automobile, and by suing to recover all money paid plus the cancellation of the notes given. The notes have been destroyed, *and he has recovered judgment for all money paid plus interest as compensation for the use of his money.* We are affirming the judgment for such recovery. Under such circumstances we believe the doctrine of election of remedies applies. Furthermore, *a final and decisive choice* of the equitable remedy by way of rescission and cancellation operates as an election of remedies and bars *a subsequent action* at law for damages.

*Id.* at 519 (emphasis added; footnote omitted).[8]

## IV.

■ Our conclusion that plaintiff should not have been forced to elect which of the two claims she wanted put to the jury would seem to dictate a remand to the trial judge for a relatively uncomplicated judgment whether to award specific performance. That is because, although the issues of existence of the 1966 agreement and breach of it were submitted to the jury only concerning the defenses of *res judicata* and statute of limitations, *Interdonato*, 521 A.2d at 1132, 1135, the fact remains that the jury found that an agreement had been reached and that defendant had breached it. Moreover, plaintiff made clear her intent below to elect specific performance of the agreement rather than damages. Thus, there would seem initially to be no issue as to the agreement that remains to be retried.[9]

Unfortunately in this legal dispute already gray with age, we are not yet at the end. Appellee contends, as a separate ground for sustaining the judgment for plaintiff solely on the unrelated count of conversion,[10] that the release entered into

7. Super.Ct.Civ.R. 49 permits the trial court to submit the case to the jury using special interrogatories, but case law makes apparent that this discretion "does not warrant withdrawing from the jury valid theories of recovery upon which a plaintiff has produced sufficient evidence." *Ajax Hardware Mfg. Corp. v. Industrial Plants Corp.*, 569 F.2d 181, 187 (2d Cir.1977). *See also Martinez v. Union Pac. R.R.*, 714 F.2d 1028, 1032 (10th Cir.1983); *Commerford v. Olson*, 794 F.2d 1319 (8th Cir.1986).

8. See also the other case relied on by the trial judge, *Continental Sand & Gravel v. K & K Sand & Gravel, Inc.*, 755 F.2d at 93 (applying Illinois law and declaring that "[a] party may not invoke (*or at least may not be granted*) a remedy based on affirmance of a contract ... and also a remedy based on disaffirmance, such as rescission" (emphasis added)).

9. ·We expressly do not decide the issue of whether plaintiff, Antonia Interdonato, had third-party standing to challenge the breach of an agreement which, as submitted to and found by the jury, consisted of a promise to devise property to her son. Defendant has not raised that argument on appeal, and we consider it waived. Nor will we decide whether defendant legally could have breached an agreement which, as presented to the jury, imposed an obligation on him to convey property only upon his death, we trust many years in the future. While plaintiff asserted at oral argument that defendant confessed to an "anticipatory breach" by testifying at trial that he would never devise the property, we have no occasion to decide this issue since defendant likewise has not raised the issue of "ripeness" in support of the judgment of the trial court.

10. We reject, in passing, appellant's contention that the jury failed to add prejudgment interest to the award of $9,642.01 on the conversion claim. *Appellant made no objection to the in-*

by the parties in 1973, and which the jury found valid and binding on plaintiff, also served to release any claim plaintiff had for breach of the 1966 agreement. Neither the trial judge nor the jury considered this issue once plaintiff elected to proceed on her theory of fiduciary breach and the claim of breach of agreement dropped from the case. We are not disposed to consider the issue at the appellate level in the first instance. It is true that ordinary contract principles govern a release, *Interdonato*, 521 A.2d at 1133, and that at least the initial question of whether a contract is ambiguous is one of law which this court reviews *de novo*, *Sacks v. Rothberg*, 569 A.2d 150, 154 (D.C.1990). Still, our function remains one of review and even the issue of whether a contract is ambiguous may require resort to extrinsic evidence. *1010 Potomac Assocs. v. Grocery Mfrs. of Am.*, 485 A.2d 199, 205–06 (D.C.1984). We think the trial judge is best situated to decide the scope of the release in the first instance, as well as whether that issue will depend "on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence," *id.* at 205, and hence require jury resolution.

Accordingly, the judgment of the Superior Court, insofar as it dismissed the count alleging breach of the 1966 agreement, is vacated and the case is remanded for further proceedings.

*So ordered.*

struction on damages remotely challenging the adequacy of the guidance the jury was given on the issue of interest. We are not persuaded either that there was plain error in the instructions or that the jury in fact failed to award prejudgment interest.