*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1318

RUTH SAUNDERS, ET AL., APPELLANTS,[*]

V.

STEPHEN T. HUDGENS, NATHANIEL X. ARNOLD,
AND U.S. BANK NATIONAL ASSOCIATION, APPELLEES.

FILED **05/10/2018**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-3686-05)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued September 15, 2016                    Decided May 10, 2018)

*Michael Lasley* for appellant.

---

[*] Although the notice of appeal in this case named Jerome Saunders as an appellant in addition to Ruth Saunders, Mr. Saunders has not pursued or participated in the appeal. His counsel, who is also Ms. Saunders's counsel, has filed no brief, made no argument, and asserted no claim on Mr. Saunders's behalf; his claims and issues are separate from those pressed by Ms. Saunders, and her arguments on appeal do not pertain to him. Consequently, pursuant to D.C. App. Rule 13 (a), we dismiss the appeal of Jerome Saunders for want of prosecution. See *Stancil v. District of Columbia Rental Hous. Comm'n*, 806 A.2d 622, 625 (D.C. 2002) (stating that under predecessor to Rule 13 (a), "dismissal is an appropriate sanction when an appellant is not diligent about prosecuting his appeal").

*Michael S. Steadman, Jr.*, with whom *Michael N. Russo, Jr.*, was on the brief, for appellee Arnold.

*Wendy Alexander*, with whom *John E. Rinaldi* was on the brief, for appellee U.S. Bank National Association.

Before GLICKMAN and FISHER, *Associate Judges*, and NEBEKER, *Senior Judge*.

GLICKMAN, *Associate Judge*:  Appellant Ruth Saunders contends the trial court erred in denying her the equitable relief she sought from appellee Stephen T. Hudgens for his breach of a contract to sell her a building.  Applying the doctrine of election of remedies to avoid a double recovery for a single wrong, the trial judge ruled that Saunders could not be granted a decree compelling Hudgens to perform the contract because she had chosen to obtain alternative relief, namely an award of monetary damages from appellee Nathaniel X. Arnold for his tortious inducement of Hudgens's breach.  Saunders argues that she had made no election and that she was entitled to receive specific performance from Hudgens *in addition to* damages from Arnold because she sought those remedies from different defendants on different legal theories of liability.  Saunders is only partly right:  we agree that she had not elected her remedy and hence was not precluded from seeking a decree of specific performance, but not that she could get more than one satisfaction for the wrong done to her.  We hold that the judge should have determined whether Saunders would be entitled to specific performance as an alternative to damages and, if so, the judge then should have permitted her to

choose which remedy to accept. We vacate the provisions of the judgment respecting her relief and remand for further proceedings.

## I.     Factual Summary[1]

The dispute before us concerns competing claims to a four-unit apartment building located at 219 Adams Street, N.E., in Washington, D.C. ("the Property"). On March 16, 2005, appellee Hudgens sold the Property to appellee Arnold. The sale spawned two lawsuits in Superior Court.

First, appellant Saunders sued Messrs. Hudgens and Arnold in CAB No. 3686-05. As pertinent here, Saunders's complaint alleged that Hudgens had breached a contract he had entered to sell the Property to her, and that Arnold had conspired with Hudgens to induce the breach. (In effect, the claim against Arnold was one for tortious interference with the sales contract, and we shall sometimes refer to it that way for convenience.) The complaint sought both compensatory damages and equitable relief that included cancellation of the sale to Arnold and a

---

[1] The history of this case is complicated. We confine our summary of the facts to what is pertinent to this decision.

decree of specific performance requiring Hudgens to convey the Property to Saunders.

Second, a group of tenants (or persons claiming to be tenants) sued Hudgens and Arnold in CAB No. 8531-06, alleging that the sale of the Property violated their rights under the Tenants' Opportunity to Purchase Act ("TOPA"). The TOPA plaintiffs sought declaratory and injunctive relief setting aside the sale and compelling Hudgens to provide them with statutory rights triggered by the sales contract.

The two civil actions were consolidated for pretrial and trial proceedings. In 2010 the proceedings were stayed when Hudgens filed for bankruptcy. Eventually, the stay was partially lifted to permit the Superior Court litigation to go forward with some restrictions. Among other things, the order lifting the stay provided that it did "not extend to execution or enforcement of any judgments against" Hudgens, and that Hudgens and the bankruptcy trustee would not "be expected, except to the extent they choose, to participate in the litigation" other than as witnesses.

Thereafter, the Superior Court litigation resumed, apparently without Hudgens's participation as a party.[2]

In a pretrial order issued on December 28, 2010, the trial judge ordered bifurcation of the consolidated trial proceedings, with a jury trial for the jury-triable issues in Saunders's case to precede a bench trial of the equitable issues in both that case and the TOPA case. For Saunders, this bifurcation meant a jury trial of her tortious interference claim seeking an award of damages against Arnold for conspiring to cause Hudgens to breach his contract to sell the Property to Saunders, and then a bench trial on her claim seeking a decree of specific performance of that sale.

At the conclusion of the jury trial, the judge instructed the jury that the elements of Saunders's claim against Arnold were:

---

[2] Mr. Hudgens has not participated in this appeal either. On October 12, 2016, after receiving Mr. Hudgens's representation that he was interested in participating, this court ordered him to file a response within twenty days "setting forth whether good cause exist[ed] for the court to excuse his failure to have filed a timely brief in this appeal and to appear for the oral argument." The order warned Mr. Hudgens that his failure to respond would "subject this appeal to being decided by this court on the existing record without further notice[.]" To date, this court has received no response to the order from Mr. Hudgens.

(1) an agreement by Mr. Arnold and Mr. Hudgens; (2) to participate in a breach of Mr. Hudgens'[s] contract or contracts with Ruth Saunders . . . ; [ ] (3) an injury was caused by an unlawful overt act performed by one of the parties to the agreement; (4) pursuant to and in furtherance of the common scheme.

As a predicate to this claim, the judge instructed the jury it would have to find that a contract had been formed between Hudgens and Saunders, "and if so what the terms of that contract were." Finally, without objection from appellant, the judge instructed the jury that if it found Arnold had conspired to cause Hudgens's breach of Saunders's contract to purchase the Property, it should "fully compensate" her by awarding "damages for breach of contract," defined as "that amount of money necessary to place the injured party in the same economic position he or she would have been in if the contract had not been breached."

In its verdict, the jury found that Arnold had conspired with Hudgens "to cause Mr. Hudgens to breach his contract(s) for sale of the [P]roperty . . . to Ms. Saunders[.]" It awarded her $40,000 in compensatory damages. Pending the outcome of the bench trial, the judge did not enter judgment on this verdict.

During and at the close of the ensuing bench trial on the outstanding equitable issues in the two consolidated cases, Saunders argued that she was entitled to a decree awarding her specific performance of her contract to purchase

the Property from Hudgens. In opposition, Arnold argued that the evidence failed to show that Saunders actually had an enforceable contract; the judge responded that "unless and until I set the jury verdict aside, the jury's verdict establishes that there was a contract because the jury concluded that there was a conspiracy to breach the contract." The judge denied Arnold's motion for judgment on the specific performance claim without prejudice to its later renewal. At no point was it suggested that Saunders had made an election to accept the award of damages instead of specific performance.

Eight months later, the judge issued a Memorandum Decision and final Order of Judgment in the consolidated cases. The judge entered a monetary judgment against Arnold and in favor of Saunders in the amount of the jury's verdict ($40,000) and denied Saunders's request that Hudgens be ordered to perform his contract to sell the Property to her.[3] In her Memorandum Decision, the judge explained that she denied specific performance because Saunders had elected to receive the remedy of damages and awarding her specific performance in

---

[3] In pertinent part, the final order also entered judgment in favor of the TOPA plaintiffs in CA No. 8531-06 and voided Hudgens's sale of the Property to Arnold. The success of the TOPA plaintiffs does not necessarily mean Saunders could not prevail on her claim for specific performance; she asserts the TOPA plaintiffs reached an agreement with her and supported her action. Whether this is so remains to be determined.

addition would result in an impermissible double recovery:

> Ms. Saunders elected to vindicate her contract rights by suing Mr. Arnold for damages based upon the theory that he tortiously interfered with her contract to buy the Property. . . . Through its verdict, the jury found that Ms. Saunders had a valid contract with Stephen Hudgens to purchase the Property and that Mr. Arnold conspired with Mr. Hudgens to interfere with her contract rights. The jury awarded her damages of $40,000. . . . Ms. Saunders'[s] offer [to purchase the Property] is not specifically enforceable because she received monetary damages for breach of her contract to buy the Property. A plaintiff cannot secure the double recovery of both damages for breach and specific performance of a contract. *See Ingber v. Ross*, 479 A.2d 1256, 1263 (D.C. 1984) (double recovery prevented by barring cumulative remedies).

## II.    Discussion

In this appeal, Saunders contends that the trial judge erred in refusing to award her specific performance on the ground that she had elected the remedy of damages and was not entitled to a double recovery. We agree with this contention in part, but only in part. The judge was correct in recognizing that Saunders is not entitled to receive both monetary damages from Arnold *and* specific performance

from Hudgens; however, Saunders was entitled to pursue both of those remedies to verdict before having to elect between them.[4]

## A. Standard of Review

Specific performance is an equitable remedy, "and the determination whether or not to order specific performance is confided to the 'sound and informed discretion' of the trial court."[5] However, "[d]espite the discretionary element, a trial court can commit error in granting or refusing [specific performance]."[6] Here, the court determined that Saunders was not entitled to

---

[4] Saunders has represented without contradiction that Arnold has not satisfied (i.e., paid) the monetary judgment against him. If our understanding that this remains so is incorrect, and Saunders has accepted full payment from Arnold in satisfaction of that judgment, the "one satisfaction" rule would bar her from pursuing Hudgens for additional relief for the same harm. *See generally* 47 AM. JUR. 2D *Judgments* § 769 *et seq.* (2017).

[5] *Independence Mgmt. Co. v. Anderson & Summers, LLC*, 874 A.2d 862, 867-68 (D.C. 2005) (quoting *Drazin v. American Oil Co.*, 395 A.2d 32, 34 (D.C. 1978)). Nonetheless, absent circumstances rendering it inequitable or impossible, the remedy of specific performance "is almost routinely available to enforce contracts for the purchase of land." 3 DAN B. DOBBS, LAW OF REMEDIES § 12.8 (1) (2d ed. 1993) (footnote omitted) (hereinafter "DOBBS"); *see also Tauber v. Quan*, 938 A.2d 724, 732 (D.C. 2007) ("[I]t is routine for courts to enforce contracts to purchase real estate by ordering that they be specifically performed.").

[6] 12 JOSEPH M. PERILLO, CORBIN ON CONTRACTS, § 63.1 (2012) (citing *Beckwith v. Clark*, 188 F. 171, 178 (8th Cir. 1911)).

specific performance as a matter of law because of the rule against duplicative recovery. "Where the matter under review is a question of law . . . this court exercises *de novo* review."[7]

## B. The Alternative Remedies

For tortiously inducing Hudgens to breach his contract with Saunders, the trial judge correctly instructed the jury that Arnold would be liable to Saunders for breach-of-contract damages.[8] We therefore understand the jury's damages award to represent the sum of money the jury deemed necessary to fully compensate Saunders for her loss by placing her in the same economic position she would have been in had Hudgens performed his contract to sell her the Property. In other

---

[7] *Independence Mgmt. Co.*, 874 A.2d at 867 (quoting *Technical Land, Inc. v. Firemen's Ins. Co.*, 756 A.2d 439, 443 (D.C. 2000)).

[8] *See Paul v. Howard Univ.*, 754 A.2d 297, 309 n.23 (D.C. 2000) ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.") (quoting RESTATEMENT (SECOND) OF TORTS § 766 (Am. Law Inst. 1979)). Damages for tortious interference may, in some cases, go beyond "normal contract expectancy," 2 DOBBS § 6.6 (1), but we need not discuss that here.

words, the damages award was the monetary equivalent of specific performance of the contract.[9]

A plaintiff is entitled to be made whole, but not more than whole. "Where the parties have entered into a contract, being made whole means realizing the benefit of the bargain that they struck."[10] Thus, as the trial judge correctly recognized, Saunders is not entitled to receive *both* the monetary equivalent of specific performance and specific performance too. That would constitute being made whole twice – an "impermissible double recovery"[11] for the same wrong. It

---

[9] *Campbell-Crane & Assocs. v. Stamenkovic*, 44 A.3d 924, 936 (D.C. 2012) ("We presume that the jury followed the instructions of the court."). At oral argument, Saunders's counsel suggested that the jury actually awarded her rescission damages rather than breach-of-contract damages. Saunders did not make this claim in the trial court, and given how the jury was instructed, we are not persuaded to so interpret its award. We will note, however, that even if the jury awarded Saunders rescission damages, she still would be obliged to choose between receiving them and receiving specific performance, because the two remedies are inconsistent in that rescission is premised on disaffirmance of the contract while specific performance is premised on its affirmance. *See Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001); 3 DOBBS § 12.7 (6).

[10] *Allen v. Yates*, 870 A.2d 39, 52 (D.C. 2005).

[11] *Ingber v. Ross*, 479 A.2d 1256, 1263 (D.C. 1984); *see also Giordano v. Interdonato*, 586 A.2d 714, 717 (D.C. 1991) (holding that damages for breach of contract and specific performance of the contract were "duplicative" remedies that could not both be obtained). We recognize that, in appropriate cases, specific performance can be combined with damages other than benefit-of-the-bargain damages. *See* 3 DOBBS § 12.8 (1). The present case does not appear to present

*(continued…)*

makes no difference that Arnold was not a party to the sales contract and was held liable only in tort. "A person can sue any number of parties, and obtain a judgment against any one, or several of them, but can gain but one satisfaction, even though that person may pursue numerous possible avenues of relief simultaneously and may obtain several judgments against different persons for the same obligation or liability."[12] The Second Restatement of Judgments provides the following apt illustration of this point:

> 3. A breaks a contract with B as a result of the acts of C. Following a trial in which the issue of damages was litigated, B obtains judgment against A for $1,000 and is paid that amount by A. Under applicable law, the measure of damages for the losses recoverable from a person inducing breach of contract is the same as that in determining the damages recoverable from the person breaking the contract. B has no claim against C.[13]

---

*(…continued)*
such a situation, as Saunders has not identified additional damages caused by Arnold's interference with her contract.

[12] 47 AM. JUR. 2D *Judgments* § 769 (footnotes omitted).

[13] RESTATEMENT (SECOND) OF JUDGMENTS § 50 cmt. d (Am. Law Inst. 1982).

## C. Election of Remedies

To say that Saunders would not be entitled to both damages for breach of contract and specific performance of the contract does not mean she was required to elect between those two remedies without knowing how the court would rule on her entitlement to each of them. This court rejected such a requirement in *Giordano*, seeing "nothing in law or policy" to justify it.[14] We explained that because "[t]he purpose of the doctrine of election of remedies is not to prevent recourse to any remedy, but to prevent *double redress* for a single wrong,"[15] the "correct course" (absent unfair prejudice to the defendant) is to permit the plaintiff to go to the trier of fact on both theories of relief without compelling the plaintiff to choose in advance which remedy he or she seeks.[16] Duplication of remedies is prevented "by permitting the plaintiff to pursue both remedies to verdict and by requiring the plaintiff to choose one of them only when it comes time to write the

---

[14] *Giordano*, *supra* footnote 11, 586 A.2d at 717 (rejecting trial court's ruling that "plaintiff had to elect between her alternative claims before the case was submitted to the jury" and could not "await the jury verdict and then select the remedy which becomes more advantageous").

[15] *Id.* (quoting *Twin City Fed. Sav. & Loan Ass'n v. Transamerica Ins. Co.*, 491 F.2d 1122, 1125 (8th Cir. 1974) (emphasis in the opinion of this court).

[16] *Id.* at 718 (citing *North Am. Graphite Corp. v. Allan*, 184 F.2d 387, 389 (D.C. Cir. 1950)).

judgment or enforce the remedy."[17]  As we stated in *Giordano*, although a verdict for the plaintiff on both claims enables the plaintiff to choose the remedy that is more "advantageous," there is "nothing objectionable" in that.[18]

Thus, the trial judge erred in denying Saunders's request for a decree of specific performance solely on the theory that she had "*elected* to vindicate her contract rights by suing Mr. Arnold for damages," and without making findings as to whether Saunders otherwise would be entitled to specific performance if she wanted it.  That the jury had adjudicated only Saunders's damages claim was due solely to the judge's decision to bifurcate the trial and defer judicial resolution of the specific performance claim; it was not due to Saunders's abandonment of the equitable remedy in favor of the legal one.[19]

---

[17]  2 DOBBS § 9.4.

[18]  586 A.2d at 717.

[19]  Arnold argues that even if the trial judge erred in denying specific performance for the reason stated, the denial was legally correct and should be upheld for other reasons.  He contends, for example, that Saunders cannot be granted specific performance because "she failed to demonstrate that she performed, or offered to perform, or was ready, willing, and able to perform, *nearly all of the essential and material terms* required of her" under her agreements with Hudgens, and that her own "unclean hands" barred her from obtaining equitable relief.  Brief for Appellee Arnold (emphasis in the original).  Saunders disputes these contentions.  Given that Arnold did not appeal the judgment entered in her favor establishing his liability for inducing Hudgens to

*(continued…)*

### III.  Conclusion

For the foregoing reasons, we vacate the trial court's orders (1) entering judgment against Arnold and in favor of Ruth Saunders in the amount of $40,000 and (2) denying Ms. Saunders's request for a decree compelling Hudgens to perform his contract to sell the Property to her.  We remand the case for the trial court (1) to determine whether Ms. Saunders is entitled to a decree of specific performance[20] and, if so, (2) to allow her to elect her remedy before the entry of a final judgment.  As for Ms. Saunders's co-appellant, Jerome Saunders, we grant no

---

*(...continued)*
breach the contract; that Arnold's standing to make these arguments is unclear; that Arnold's alternative grounds for affirmance would require this appellate court to immerse itself in a factual record best scrutinized, in the first instance, by the trial judge as trier of fact; and that the trial judge has yet to consider whether any of the alternative grounds identified by Arnold should preclude Saunders from obtaining a decree of specific performance, we consider it premature to reach and resolve the issues Arnold raises.

Similarly, it is premature for this court to consider whether Saunders's potential entitlement to specific performance is affected by, or subject to, the TOPA rights of the tenants who prevailed in CAB No. 8531-06.  See footnote 3, *supra*.

[20] No argument has been made to us that the (partially lifted) automatic stay resulting from Hudgens's bankruptcy filing or any order of the bankruptcy court in his case precludes a decree requiring specific performance of his contract with Saunders, and we express no view on that subject.

relief and dismiss his appeal for want of prosecution, as explained in footnote \*, *supra*.

*Vacated and remanded.*