*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-0937

REDSHIFT, LLC, APPELLANT,

V.

LAVONNE SHAW, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAR-02722-17)

(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Argued November 12, 2020                    Decided December 16, 2021)

*Brian Gormley* was on the brief for appellant.

*Bobby G. Henry*, with whom *Debra Palmer-Henry* was on the brief, for appellee.

Before BECKWITH, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Lavonne Shaw signed a contract agreeing to sell real property to Redshift, LLC. The property was not Shaw's to sell, however, as it belonged to the estate of her deceased grandmother, Ida Bolling. Shaw is not the personal representative of Ida Bolling's estate and has no authority to sell or

otherwise dispose of its assets; she instead has a mere one-eighth inheritance interest in the estate and its only asset, the property. When Shaw did not follow through with the sale, Redshift sued her for breach of contract and sought to compel her to complete the sale. After a year of litigation, Redshift moved for summary judgment, and while that motion was pending, Redshift further sought leave to amend its complaint to add fraud and intentional misrepresentation claims against Shaw.

The trial court denied the motion to amend because Redshift offered no explanation as to why it waited more than a year to seek to amend its complaint. It also denied Redshift's motion for summary judgment and, later, granted summary judgment in Shaw's favor. It reasoned that Redshift's breach of contract claim could not succeed as a matter of law because it was not possible for Shaw to fulfill her end of the agreement where she had no authority to sell the property, and that impossibility rendered the contract "null and void." Redshift now challenges each of those rulings. It principally argues that Shaw, while incapable of selling the subject property in her personal capacity, had the ability to become personal representative of Ida Bolling's estate and was contractually obliged to do just that in order to complete the agreed-upon sale. Redshift also contends the trial court abused its discretion in denying it leave to amend its complaint. We disagree as to both points and affirm.

**I.**

This appeal concerns a property located at 4620 Hunt Place, NE. Many decades ago, the property was owned by Arthur Bolling and his second wife, Ida Bolling. After Arthur passed away in 1954, Ida became the sole owner of the property, and remained so for more than four decades, until she died in 1995. At that point, the property became an asset of Ida Bolling's estate, originally opened and administered by her two sons, Arlander and Robert Rawles. Both brothers have since died, and Shaw is one of the surviving daughters of Robert Rawles. Given the other surviving heirs, Shaw has a one-eighth (or 12.5%) inheritance interest in the property, the only remaining asset of the estate.

By 2016, the property had fallen into some disrepair and years' worth of unpaid taxes left it subject to a tax foreclosure proceeding. Early that year, Redshift's owner and real estate investor Jerry Jewell approached Shaw, who was listed alongside Ida Bolling as an owner of the property in D.C. tax records. According to Redshift, Shaw indicated she was the sole heir to the property, though Shaw disputes that she made any such representation. Shaw ultimately signed a "Standard Buyers Contract" agreeing to sell the property to Redshift. The single-page contract stated that closing on the property would take place within 15 days

and that Redshift would pay $95,000 in cash. It further stated that the express terms of the contract constituted "the entire agreement" and "that no other representation or agreements have been made or relied upon." At the time the contract was signed, Ida Bolling's estate was dormant and did not have a personal representative. Shortly after signing the contract, Shaw learned that the property's tax-assessed value was about double the $95,000 reflected in the contract and she stopped responding to Redshift's efforts to finalize the sale.

About a year later, Redshift filed a complaint in D.C. Superior Court alleging breach of contract and seeking "to compel a sale of the Property through an order for specific performance." Shaw filed an answer denying that she ever contracted to sell the home and raising a host of additional defenses, plus several counterclaims of her own. Through discovery it became clear that Shaw was not the only heir to Ida Bolling's estate, though Shaw maintains that Redshift was on notice of other potential heirs before it filed suit. Redshift nonetheless moved for summary judgment on the theory that Shaw "failed to take any steps to effectuate the terms of the agreement." More specifically, Redshift posits that Shaw should have sought to become the personal representative of Ida Bolling's estate, so as to be in a position to finalize the sale to Redshift. After filing its summary judgment motion, and more than a year after the initial complaint was filed, Redshift filed a motion for leave to

amend its complaint to add claims for fraud and intentional misrepresentation. The motion was silent on the reason for delay, offering only that the new claims raised "no new facts and do[] not raise a need to engage in additional discovery." The new claims alleged, in sum, that Shaw misrepresented that she was the only living heir to Ida Bolling's estate and thereby misled Redshift into contracting with her, causing it unspecified damages.

The trial court denied both Redshift's motion for summary judgment and its motion to amend. As to the former, the court reasoned that it could not "grant specific performance of a contract" that Shaw "lacks the capacity to perform." The court further rejected Redshift's argument that Shaw was required to make efforts to "become appointed as personal representative" of the estate, finding that to be at odds with the contract's language. The contract—which explicitly stated that it "comprises the entire agreement of" the parties and that "no other representation or agreements have been made or relied upon"—did not purport to oblige Shaw to take any steps to become the estate's personal representative. That it required closing to be conducted within 15 days was further evidence that it envisioned a sale conducted outside of the probate process, in contravention of applicable probate laws. In addition to denying Redshift's motion for summary judgment, the court ordered

briefing on "whether Redshift's complaint retains any merit" or instead should be dismissed.

The court also denied Redshift's motion for leave to amend its complaint after considering a five-factor test guiding that discretionary judgment: "(1) the number of requests to amend made by the movant; (2) the length of time the case has been pending; (3) bad faith or dilatory tactics on the part of the movant; (4) the merit of the proffered pleading; and (5) prejudice to the nonmoving party." *Taylor v. District of Columbia Water & Sewer Auth.*, 957 A.2d 45, 51 (D.C. 2008) (quoting *Sherman v. Adoption Ctr. of Washington, Inc.*, 741 A.2d 1031, 1037 (D.C. 1999)). It found the "first two factors tend to support granting leave to amend," though the final three counseled against it. As to the third factor, it noted that Redshift provided no justification "as to why it has taken a year to discover materials" available in public records and underlying its request to amend its complaint, so that the motion displayed "bad faith or dilatory tactics on the part of" Redshift. As to the fourth factor, the court reasoned that the proposed amendments lacked merit because it could not grant the requested relief of specific performance where the property was not Shaw's to sell, and Redshift's attempt to add "actual damages" as a remedy failed to identify any actual damages it had suffered. As to the fifth factor, the court disagreed with Redshift that its new claims raised no need for additional discovery,

instead finding that the proposed amendments would raise "a different subset of questions, documents, witnesses, and depositions" so that Shaw would be prejudiced by an entirely new round of discovery related to those issues.

The litigation continued for over another year, during which Josephine Rawles, the surviving spouse of Robert Rawles and Ida Bolling's daughter-in-law, petitioned D.C. Superior Court to appoint her as personal representative of Ida Bolling's estate. The court granted her petition. Shortly thereafter, Shaw moved for summary judgment or, in the alternative, to transfer the case to the probate court, arguing the contract was void and in contravention of the probate laws. The trial court granted her summary judgment motion, finding the contract "null and void" because performance was "legally impossible at the time the contract [was] made." Redshift timely appealed.

## II.

On appeal, Redshift challenges three of the trial court's rulings: (1) its decision to deny Redshift leave to amend its complaint; (2) its grant of Shaw's motion for summary judgment; and (3) its denial of Redshift's motion for summary judgment. We first address the trial court's denial of the motion to amend, and then consider its summary judgment rulings.

## A. Motion to Amend

We review a trial court's ruling on a motion to amend a complaint for abuse of discretion. *Flax v. Schertler*, 935 A.2d 1091, 1105 (D.C. 2007). Leave to amend should be "granted freely 'when justice so requires.'" *Johnson v. Fairfax Village Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 501 (D.C. 1994) (quoting Super. Ct. Civ. R. 15(a)). Redshift maintains that justice required granting it leave to amend its complaint principally so that it could add two new claims, fraud and intentional misrepresentation. In determining whether amendment should be permitted, we have outlined five factors trial courts should, and the trial court in this case did, consider: "(1) the number of requests to amend made by the movant; (2) the length of time the case has been pending; (3) bad faith or dilatory tactics on the part of the movant; (4) the merit of the proffered pleading; and (5) prejudice to the nonmoving party." *Taylor*, 957 A.2d at 51.

We need not assess the trial court's analysis point-by-point, however. That is because we have made clear that a trial court has the discretion to deny an amendment for undue delay where "the moving party has not put forth any satisfactory reason for the delay (e.g., new information which could not have been uncovered earlier) and that an 'unduly delayed' amendment would mean a large

additional expenditure of effort and money by the opposing party in discovery on a new aspect of the case after substantial discovery already has taken place." *Pellerin v. 1915 16th Street Co-op. Ass'n, Inc.*, 980 A.2d 1234, 1237 (D.C. 2009) (internal quotations omitted). That is the case here. Redshift's cursory motion to amend was filed (1) more than a year after bringing suit, (2) after the close of discovery, and (3) after filing its summary judgment motion. As the trial court accurately determined, permitting the amendment would have subjected Shaw to a new round of discovery on claims that Redshift offered no justification for omitting in its initial complaint.

Redshift now counters that it only discovered the factual basis for its fraud and intentional misrepresentation claims shortly before it sought leave to amend. It contends that throughout the litigation it had believed that Shaw was the sole heir to the property, and only after discovery revealed otherwise did it have the factual basis for its fraud and intentional misrepresentation claims (that Shaw had misled Redshift into believing she was the property's sole heir). While the factual premise of Redshift's argument is disputed,[1] we acknowledge that such a delayed discovery of

---

[1] Shaw denies ever holding herself out as the property's sole heir and maintains that Redshift had constructive notice of other potential heirs when it intervened in a tax foreclosure proceeding concerning the property, which was about two months before Redshift filed its initial complaint and more than a year before it sought leave to amend its complaint. By the time Redshift intervened in the tax foreclosure proceeding, in February 2017, the judge in that proceeding had ordered

the basis for its newly asserted claims would indeed be a fairly compelling factor in favor of granting leave to amend.  But Redshift did not advance this as the reason for its delay in its motion seeking leave to amend.  We are thus deprived of any trial court record regarding whether Redshift's claims of late discovery are tenable.  More importantly, we cannot fault the trial court for failing to consider and credit an explanation that Redshift did not offer in seeking leave to amend.

In addition to the two new claims Redshift sought to add to its complaint, it also sought, for the first time, actual damages on its breach of contract claim.  Yet again, Redshift offered no explanation as to why it waited more than a year to allege that it had suffered actual damages, and as the trial court pointed out, Redshift did not articulate any basis for asserting that it had in fact suffered actual damages.  The trial court thus acted within its discretion in denying Redshift's motion for leave to amend its complaint to add two new claims and a new remedy of actual damages.

**B. Summary Judgment Motions**

an heir search to be performed and that alone, in Shaw's view, should have alerted Redshift to other potential heirs before filing its suit against Shaw.

Redshift next challenges the trial court's summary judgment rulings. It argues that summary judgment should have been granted in its favor instead of Shaw's, and that the trial court should have compelled Shaw to specifically perform under the contract and complete the sale. We review grants of summary judgment de novo, undertaking "an independent review of the record." *District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d 1144, 1155 (D.C. 2009). "Summary judgment is appropriate if there is no genuine dispute as to any material fact." *Johnson v. District of Columbia*, 225 A.3d 1269, 1275 (D.C. 2020). The record, as well as any reasonable inferences therefrom, must be viewed in the light most favorable to the non-moving party. *Bailey v. District of Columbia*, 668 A.2d 817, 819 (D.C. 1995). Viewing the record in the light most favorable to Redshift, we conclude that the trial court was correct to grant summary judgment in Shaw's favor. That conclusion forecloses Redshift's argument that summary judgment should have been granted in its favor.

The trial court reasoned that the contract was unenforceable because performance was "legally impossible at the time the contract [was] made," as the subject property was not Shaw's to sell. Redshift acknowledges that Shaw did not have legal authority to sell the property. Nonetheless, it asserts that she "could quite possibly have become personal representative [of Ida Bolling's estate] had she

simply submitted a probate petition," and that she was therefore contractually bound to pursue that route and the trial court should have compelled her to do so. In assessing that argument, we note that specific performance is the only remedy Redshift seeks for its breach of contract claim.[2] Redshift does not, for instance, seek to compel Shaw to sell her 12.5% interest in the property (even if the contract price were prorated), nor does it seek any type of contract reformation. Our review is therefore limited to the particular claim before us, seeking specific performance of the contract. "[O]ften impossibility is a broader defense to an action for specific performance than it is for an action for damages." *See* 12 Corbin on Contracts § 64.10 (2019); *see also Saunders v. Hudgens*, 184 A.3d 345, 349 n.5 (D.C. 2018) (specific performance is unavailable as a remedy when "inequitable or impossible").

---

[2] Redshift has disavowed any interest in purchasing Shaw's inheritance expectancy in the property, and while its initial complaint requests "any other relief . . . it appears to the Court to be good and necessary," it has never suggested what that other relief might be. Instead, it maintains on appeal that "sale of the actual Property itself" by way of an "order [of] specific performance either by Shaw or a court appointed trustee on her behalf" is the only appropriate remedy for its breach of contract claim. Redshift did seek to amend its complaint to add a claim for actual damages, though as we explained in Part II.A, the trial court acted within its discretion to deny that amendment because of Redshift's failure to offer any justification for its delay in seeking leave to amend and the fact that Redshift did not articulate any theory of actual damages. It seems the request for actual damages was made in conjunction with the disallowed claims for fraud and intentional misrepresentation, and not the breach of contract claim.

As support for its argument that Shaw should have been compelled to complete the sale, Redshift relies primarily on *Douglas v. Lyles*, 841 A.2d 1 (D.C. 2004). *Douglas* involved four siblings who agreed to sell a property that they owned, in part, while the remainder of the property belonged to their mother's estate, of which the four siblings were the only heirs. *Id.* at 3 & n.3. The siblings collectively held a 100% interest in the property, with some of that interest already realized, and some of it an undistributed inheritance expectancy from their mother's estate. *Id.* at 2. When the siblings tried to back out of their contract to sell the property, the buyer sued for specific performance, i.e., to compel the siblings to complete the sale. *Id.* at 3. We agreed that specific performance was appropriate in *Douglas*, stressing that the sellers were the only heirs to their mother's estate and "there was no impediment to perfecting their interests." *Id.* at 4. We reasoned that the siblings who entered into the contract (1) had "a specific and quantifiable future interest" to 100% of the property, (2) "had the right to insist upon distribution of their interests in the real property" from the estate, and (3) agreed to sell no more than what they were entitled to, namely, the property in its entirety. *Id.* at 4-5. In short, the contract was not void "simply because the shares of the property" held by their mother's estate "had not

yet been distributed" to the siblings, as the siblings had an uncontested right to such a distribution.[3] *Id.* at 5.

The glaring distinction between *Douglas* and this case is that Shaw is not the only person with an interest in the property that Redshift seeks to compel her to sell; she instead has a mere 12.5% interest in it. Shaw did not contract to sell only her own interest in the property, as the siblings had done in *Douglas*, but also the remaining 87.5% interest held by the other heirs to Ida Bolling's estate. In that critical respect, this case more closely resembles one decided nearly one hundred years ago by the Court of Appeals of the District of Columbia, *Reilly v. Cullinane*, 287 F. 994 (1923), than it does *Douglas*. *Reilly* held that specific performance was not an available remedy where a husband agreed to sell property in which his wife

---

[3] Redshift also relies on *DSP Venture Group v. Allen*, 830 A.2d 850 (D.C. 2003), but that case is inapposite. It is similar to *Douglas* in the factual sense that *DSP* also involved an attempted sale of estate property by a party whose inheritance expectancy gave him a 100% interest in the property. *Id.* at 850. But unlike in *Douglas* or this case, the seller in *DSP* did not contend on appeal that the contract was void because he lacked capacity to enter into a contract on behalf of the estate. *Id.* at 851 n.1. The issue was simply not raised or considered in *DSP*, as we expressly noted, *id.*, so it has no bearing on our analysis. *See District of Columbia v. Gould*, 852 A.2d 50, 55 (D.C. 2004) (where "the 'judicial mind' did not pass on the question," the decision "does not constitute precedent with respect to that question"). That aside, *DSP* is factually distinguishable on the same grounds as *Douglas*: the would-be sellers in both cases had a 100% interest in the property and did not purport to sell the rights and interests of other heirs, as occurred here.

had a dower interest she did not wish to sell. *Id.* at 998. As in this case, the would-be seller contracted to divest a third-party of her interest in the property. *Id.* at 996. The court explained that whether specific performance could be ordered "depends on whether the wife can be or ought to be compelled to part with her dower right." *Id*. The court concluded the wife "cannot be forced by judicial decree to part with her dower right in order to fulfill a contractual obligation incurred by her husband without her consent." *Id.* The same is true here. The other heirs to Ida Bolling's estate have an 87.5% interest in the property and they cannot be forced by judicial decree to part with their interests by virtue of a contractual obligation that Shaw purportedly undertook in her personal capacity.

Redshift insists this distinction does not matter. It argues that Shaw might conceivably have acquired title to the property by becoming the personal representative of Ida Bolling's estate and then sold it on behalf of the other heirs. That might be true as a matter of what Shaw could have gotten away with had she attempted to finalize the sale—though that is far from clear—but it provides no basis for a court to now order specific performance, for a number of reasons.

*First*, Shaw could not conceivably sell the property without first becoming the estate's personal representative, and the applicable statute provides that a court may

deny anybody personal representative status—even somebody with the highest priority[4]—"for good cause shown." D.C. Code § 20-303(d) (2012 Repl.). There would be not only good but extraordinary cause to deny Shaw personal representative status here, given that she had attempted in her personal capacity to sell an asset of the estate that she did not administer for far below its market value. *Second*, even if Shaw were named the personal representative of the estate, the contracted-for sale would predictably be precluded as against the interests of the other heirs. *See* D.C. Code § 20-521(a) (2012 Repl.) ("for good cause shown," court may restrain personal representative from taking any action "which would unreasonably jeopardize the interest of" another interested person). *Third*, if Shaw were the estate's personal representative, she would be bound by fiduciary obligations not to finalize the sale if, as appears to be undisputed, it "did not further the best interests of the heirs." *In re Estate of Green*, 912 A.2d 1198, 1201, 1209 (D.C. 2006) (invalidating agreement entered into by estate's personal representative where it was not "in the best interests of the heirs"). Shaw was not acting as a fiduciary when she apparently agreed to sell the property, and a court could not compel her to complete that sale where doing so would require her to breach

---

[4] The parties dispute whether Shaw had priority over Josephine Rawles to become the estate's personal representative. *See generally* D.C. Code § 20-303(a)(1). We need not resolve that dispute as it is immaterial to our resolution of this appeal.

newfound fiduciary obligations. *See generally* D.C. Code § 20-701(a) (2012 Repl.) (articulating personal representative's fiduciary duty to administer estate "consistent with the best interests of the persons interested in the estate").

In short, Shaw had no right to attempt to sell an estate asset outside of the probate process, and she has no ability to satisfy her end of the purported deal given the insurmountable legal hurdles detailed above. As in *Reilly*, the court could not compel her to finalize a sale divesting others of their interest in the property where they never consented to the sale, at least not where Shaw was not acting as the estate's personal representative when entering into that contract. If Redshift is correct that Shaw fraudulently induced it into entering a contract that she had no ability to perform, then its remedy lies in tort (e.g., fraud), rather than contract. As explained in Part II.A, Redshift's lengthy and unexplained delay in attempting to amend its complaint to include tort claims permitted the trial court to deny that amendment, leaving Redshift with only a non-viable contract claim. The trial court was correct to grant summary judgment in Shaw's favor on that claim.

**III.**

The judgment of the Superior Court is affirmed.

*So ordered.*